IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 23-00035 (MN) |
| | ) |
| CLIFTON GIBBS and BROOKE WATERS, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Kristen Clarke, David Weiss, Briana Knox, Julie Pfluger, Caylee Campbell, U.S. Department of Justice, Wilmington, DE, Madison, WI, and Washington, DC– Attorneys for Plaintiff

Clifton Gibbs, Philadelphia, PA – Pro Se Defendant

Margaret M. Grasso, Law Office of Margaret M. Grasso, Philadelphia, PA – Standby Counsel for Defendant Clifton Gibbs

May 9, 2024
Wilmington, Delaware

NOREIKA, U.S. DISTRICT JUDGE

Presently before the Court is the request of *pro se* Defendant Clifton Gibbs ("Gibbs") for bail. (D.I. 123; D.I. 142).[1] For the reasons stated below, the Court DENIES this request.

## I. BACKGROUND

The Government filed its Indictment against Gibbs and Brooke Waters ("Waters") on April 3, 2023. (D.I. 3 at 17). It alleges that Gibbs and Waters trafficked thirteen individuals between April 2014 and December 2020, giving rise to the following charges against both Defendants: nine counts of sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(1) 1594(a) and 2 (D.I. 3 at 1-6); and six counts of forced labor, in violation of 18 U.S.C. §§ 1589, 1594(a) and 2 (D.I. 3 at 6-9). The Indictment also individually charges Gibbs and Waters with one count each of interstate transportation for the purposes of prostitution in violation of 18 U.S.C. § 2421(a). (D.I. 3 at 9-10). Gibbs has pleaded not guilty to all counts. (D.I. 3-8 at 1). Waters has pleaded guilty to Counts 5 (sex trafficking Victim 5 by force, fraud, or coercion), 13 (forced labor by Victim 12), and 16 (interstate transport of Victims 5 and 6 for the purposes of prostitution). (D.I. 3 at 5, 8, 9-10; D.I. 3-8 at 1).[2]

On May 15, 2023, the government filed a Memorandum in Support of Detention, ("the Detention Memorandum"), in which it requested that Gibbs be detained before trial and proffered supporting evidence. (D.I. 20 at 1-25). On May 16, 2023, then United States Magistrate Judge Jennifer Hall held a contested detention hearing, found "clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community," and ordered Gibbs detained pending trial. (D.I. 22 at 2-3) (citing

---

[1] The motion in which Gibbs requested a bail rehearing also includes a request for grand jury transcripts. (D.I. 123 at 8, 19). The Court will address this request in a separate opinion.

[2] The charges under 18 U.S.C. § 1594(a) have since been dismissed. (D.I. 108 at 3:8-4:4).

18 U.S.C. §§ 3142(f) and (g)). Judge Hall reached this conclusion after considering the proffered evidence in light of four factors specified in statute: the nature and seriousness of the charges; the weight of the evidence; Gibbs' history and characteristics; and "the nature and seriousness of the danger to any person or the community" that Gibbs' release would pose. (D.I. 134-1 at 25-30) (citing 18 U.S.C. § 3142(g)).

Gibbs requested a bail rehearing on March 18, 2024. (D.I. 123). The government responded on April 8. (D.I. 134). The Court considered the possibility of granting Gibbs bail and the proffered evidence at an April 24, 2024 status conference ("the April 24 status conference") (D.I. 144) and a May 6, 2024 hearing ("the May 6 hearing") (D.I. 142).

## II. LEGAL STANDARDS

Pursuant to the Bail Reform Act, a court must detain a defendant if it finds clear and convincing evidence that no release condition or combination of conditions will reasonably assure the safety of any other person and the community if the defendant is released. 18 U.S.C. §§ 3142(e) & (f); *see also United States v. Himler*, 797 F.2d 156, 159 (3d Cir. 1986) ("a defendant's dangerousness may serve as a basis for pretrial detention" under the Bail Reform Act). When a judicial officer finds probable cause that a defendant committed certain offenses, a rebuttable presumption exists in favor of detention. 18 U.S.C. § 3142(e)(3). If a defendant successfully rebuts this presumption, the government must present clear and convincing evidence that no release conditions can reasonably ensure the safety of others. *See, e.g., United States v. Gonzalez-Rodriguez*, Crim. No. 15-13-1-SLR, 2015 WL 3507946 at *4 (D. Del. June 2, 2015) ("For purposes of argument, the court will assume that defendant has rebutted the presumption and will turn to consider whether plaintiff has demonstrated by clear and convincing evidence that no condition or combination of conditions would reasonably ensure the safety of the community if defendant were to be released") (citing *United States v. Perry*, 788 F.2d 100, 115 (3d Cir. 1986)).

18 U.S.C. § 3142(g) lists four factors ("the § 3142(g) factors") that a court must consider in determining whether the defendant should be detained pending trial under § 3142: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. §§ 3142(g)(l)-(4). In considering those factors, the court is not bound by the "rules concerning the admissibility of evidence." 18 U.S.C. § 3142(f). "[E]ither party may proceed by proffer and the rules of evidence do not apply." *United States v. El-Hage*, 213 F.3d 74, 82 (2d Cir. 2000).

A defendant may challenge a magistrate judge's detention order by appealing to the district court. 18 U.S.C. § 3145(b). A district court's review is *de novo*, although it is not required to conduct another hearing. *United States v. Delker*, 757 F.2d 1390, 1394-96 (3d Cir. 1985); *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990). "In most cases the district court will find it useful to consider carefully the decision and reasoning of the magistrate." *Delker*, 757 F.2d at 1395. The district court is not, however, limited to the magistrate's findings. "The district court should ultimately decide the propriety of detention without deference to the magistrate judge's conclusion, should not rely solely on the findings and recommendations of the magistrate, but should provide its own findings of fact and statement of reasons for its ultimate decision." *United States v. Thompson*, No. 4:16-CR-00019-19, 2018 WL 447331, at *1 (M.D. Pa. Jan. 17, 2018).

In addition to challenging a magistrate judge's application of the § 3142(g) factors, a defendant may also challenge pretrial detention as a due process violation. *See United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986). The Third Circuit has explained that due process judgments "should reflect the factors relevant in the initial detention decision" under § 3142(g) and "such additional factors as the length of the detention that has occurred, the complexity of the

3

case, and whether the strategy of one side or the other has added needlessly to that complexity. In some cases, the evidence admitted at the initial detention hearing, evaluated against the background of the duration of pretrial incarceration and the causes of that duration, may no longer justify detention." *Id.*

## III.   DISCUSSION

In his motion, Gibbs challenges his detention on the basis of the § 3142(g) factors. (D.I. 123 at 3-5, 14-17, 21-22). He also cites the Third Circuit's ruling in *Accetturo* that "at some point due process may require a release from pretrial detention or, at a minimum, a fresh proceeding at which more is required of the government than is mandated by section 3142." (D.I. 123 at 12) (citing *Accetturo*, 783 F.2d at 388). When pretrial detention is challenged on both statutory and due process grounds, district courts typically consider whether both relevant sets of factors – those in § 3142(g) and those listed in *Accetturo* – favor detention. *See, e.g., United States v. Xu,* Crim. No. 17-63-LPS, 2018 WL 2435192 at *1-*3 (D. Del. May 30, 2018); *United States v. Yijia Zhang*, Criminal Action No. 12-498, 2014 WL 5285928 at *2-*5 (E.D. Pa Oct. 16, 2014); *United States v. Nikparvar-Fard*, No. CR 18-101-1, 2022 WL 2974715, at *2 (E.D. Pa. July 26, 2022). This Court will do so here.

### A.   The § 3142(g) Factors All Favor Detention

Gibbs has been charged with several counts of violating 18 U.S.C. § 1591(a)(1) and § 1589, (D.I. 3 at 1-9), both of which carry maximum sentences of life imprisonment. 18 U.S.C. §§ 1589(d), 1591(b)(1). These charges create a rebuttable presumption that "no condition or combination of conditions will reasonably assure . . . the safety of the community." *See* 18 U.S.C. § 3142(e)(3)(D) (establishing this presumption upon a finding of probable cause that a defendant committed the charged offense) and *U.S. v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986) ("an

indictment is a sufficient substitute for a preliminary hearing to establish probable cause" for pretrial detention purposes).

Assuming, without deciding, that Gibbs has rebutted this presumption, the Court looks to whether the government has presented clear and convincing evidence that no condition or combination of conditions can reasonably assure the safety of any person and the community, as indicated by four factors listed in 18 U.S.C. § 3142(g).[3]  *See, e.g. Gonzalez-Rodriguez*, 2015 WL 3507946 at *4.  After considering the motion filings and the facts proffered in the Detention Memorandum and previous hearings, the Court finds that the government has met it burden by clear-and-convincing evidence.

### 1. <u>The Nature and Circumstances of the Offense Charged</u>

The first § 3142(g) factor considers "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of [18 U.S.C.] section 1591, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device."  18 U.S.C. § 3142(g)(1).  The charges against Gibbs have several of these traits.

Gibbs has been charged with not one, but *nine* counts of sex trafficking by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a).  (D.I. 3 at 1-3).  The government has also proffered that Gibbs perpetrated these actions in part by using firearms and controlled substances.  As detailed in its Memorandum in Support of Detention ("the Detention Memorandum"), the

---

[3]  These four factors can also indicate whether any conditions of release can reasonably assure Defendant's appearance.  18 U.S.C. § 3142(g).  Because the Third Circuit has found that a defendant's dangerousness alone may justify pretrial detention, *Himler*, 797 F.2d at 159, the Court will limit its inquiry to the safety of the community.  One of the cases Gibbs cites only concerned flight risk and is therefore irrelevant to this inquiry.  *See United States v. Sabhnani*, 493 F.3d 63, 64-65 (2d Cir. 2007) and D.I. 123 at 11-12 (citing this case in support of pretrial release).

5

Government proffers that Gibbs "used threats of physical violence (including brandishing a firearm) . . . to coerce the [alleged] Victims into continuing to labor on their behalf," and that he and Waters

> would give many of the [alleged] Victims heroin (known to be a 'downer' drug) at night before going to sleep, and cocaine, crack, or crystal meth (known to be 'upper' drugs) before working.  GIBBS would often withhold drugs until the work was complete.  If the work was not done to his satisfaction – i.e., not enough dates [with customers purchasing sex], [stolen and re-sold] items, or labor – he would withhold drugs, which would induce withdrawal sickness . . . All of the Victims feared opiate withdrawal.
>
> (D.I. 20 at 8-9).

Proffered evidence thus shows that Gibbs used drugs and firearms to violate 18 U.S.C. § 1591.[4]  If convicted on just one of these counts, he faces a prison sentence of 15 years to life. 18 U.S.C. § 1591(b)(1).  This favors pretrial detention.[5] [6]

---

[4]  At the May 6 hearing, Gibbs' standby counsel read statements from some of the alleged victims that they did not see Gibbs with guns.  (D.I. 142 at 45:7-45:9).  Gibbs also told the Court that two alleged witnesses "never said anything about a gun."  (D.I. 142 at 17:8-17:9).  Given that the Indictment covers thirteen alleged victims over a six-year period, (D.I. 3 at 1-9), the Court cannot discount the government's proffer that Gibbs' alleged scheme involved guns at other times.

[5]  The nature of the charges against Gibbs distinguishes this case from two cases Gibbs cites in support of pretrial release, in which the charges did not include any of the traits permitting or favoring pretrial detention under § 3142.  *See United States v. LaLonde*, 246 F. Supp. 2d 873, 874 (S.D. Ohio 2003) and *United States v. Tadlock*, 399 F. Supp. 2d 747, 750-52 (S.D. Miss. 2005).  *See also* D.I. 123 at 8 (citing these cases in support of pretrial release).

[6]  Gibbs argues, and the government denies, that Judge Hall's order of detention relied on the erroneous belief that one of the alleged victims was a minor.  (D.I. 123 at 3; D.I. 134 at 6-7).  There is no evidence of that in Judge Hall's order (D.I. 23) or in the explanation of her decision she gave at Gibbs' first detention hearing (D.I. 129 at 21:16-28:24).  In any event, however, even without any minor victims, the multiple alleged § 1591 violations, and Gibbs' proffered use of firearms and drugs to commit them, provide strong support for detention under the first § 3142(g) factor.

## 2. The Weight of the Evidence Against the Person

The second § 3142(g) factor considers "the weight of the evidence against the person." Here, the government has proffered reports of physical abuse from three alleged victims, sexual assault from three alleged victims, commercial sex from two alleged victims, and withholding drugs from one alleged victim. (D.I. 20 at 9, 11). The Detention Memorandum also explains that several alleged victims reported rape and physical abuse by Gibbs (D.I. 20 at 9) and that multiple alleged victims described similar coercion to sell sex and "boost" items by stealing and re-selling them (D.I. 20 at 8-12).

At the May 6 hearing, Gibbs' standby counsel read several remarks by Gibbs' co-defendant and statements by alleged victims that either: contradict the alleged victim statements proffered by the government; suggest that Gibbs' co-defendant performed several aspects of the alleged criminal enterprise; or otherwise tend to exculpate Gibbs. (D.I. 142 at 41:6-47:8). Even with these inconsistencies, however, the overwhelming bulk of the proffered evidence still indicates that Gibbs operated a coercive forced-labor and sex-trafficking scheme.

In the Detention Memorandum, the government has proffered far more evidence than just the alleged victims' accounts. This additional evidence includes one text message exchange in which Gibbs tells Alleged Victim 4 that he will not give her drugs before a "date" from which he hopes to make money, and where Waters provides the encounter's time and place. (D.I. 20 at 13-14). In another exchange, which the government says is "about boosting [items by stealing them for resale] and withholding drugs," Gibbs instructs Alleged Victim 11 to "get da stuf and jam it n da kar" and "use da truk wit a fake tag;" Alleged Victim 11 replies, "Im sick as hell can you please help me so I can work[?]" (D.I. 20 at 14). The government also cites "909 commercial sex advertisements on [the prostitution website] Backpage for various women including Victims 1 through 7," then explains that some of these advertisements were posted with the email address

"discretionarydates@gmail.com," and that Gibbs admitted to owning an escort service called "Discretionary Dates." (D.I. 20 at 1). Gibbs reiterated that admission at the May 6 hearing. (D.I. 142 at 24:5-24:10). The Detention Memorandum also notes that "pimping" literature and hundreds of condoms were recovered from Gibbs' property. (D.I. 20 at 16).

It remains to be seen whether this evidence can establish Gibbs' guilt beyond a reasonable doubt, or even whether it may be admitted at trial. *See* 18 U.S.C. § 3142(f) (rules regarding admissibility of evidence do not apply at pretrial detention stage). For purposes of the present motion, however, the evidence proffered against Gibbs is at least as strong as in other cases where the court upheld pretrial detention.[7] *See, e.g., Gonzalez-Rodriguez*, 2015 WL 3507946 at *4 (proffered evidence included video surveillance and taped conversations from investigation, evidence of heroin production and distribution recovered from defendant's apartment, and fact that at least one alleged co-conspirator was a fugitive); *United States v. Crosby-Avant*, Crim. No. 23-71 (MN), 2023 WL 6647051 at *3 (D. Del. Oct. 12, 2023) (testimony from police officer who witnessed alleged crime, and from other officers about forensic evidence); *United States v. Lawal*, No. 22-11-1 (MN), 2022 WL 3081431, at *3 (D. Del. Aug. 3, 2022) (bank records, witness testimony, and corroborating text messages). Accordingly, the Court finds that the weight of the evidence favors detaining Gibbs to protect the community.[8]

---

[7]   As was discussed at the May 6 hearing, (D.I. 142 at 15:6-15:9, 35:16-39:17), the Court has not considered an allegation that Gibbs abused his child or any statement his co-defendant made in connection with her plea agreement in this analysis.

[8]   Even applying the 9th Circuit holding Gibbs cites that "the weight of the evidence is the least important of these various factors," (D.I. 123 at 11 (quoting *United States v. Cardenas*, 784 F.2d 937, 939 (9th Cir. 1986)), this factor still supports detaining Gibbs before trial. The proffered evidence here is also far stronger than the hearsay statements that the Eastern District of Pennsylvania found insufficient in another case Gibbs cites. *See U.S. v. Fisher*, 618 F. Supp. 536, 537 (E.D. Pa. 1985) (rejecting pretrial detention based solely on hearsay) and D.I. 123 at 9 (citing this case in support of pretrial release).

### 3. Gibbs' History and Characteristics

The third factor requires the Court to consider the Defendant's history and characteristics, including –

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law

18 U.S.C. § 3142(g)(3).

The Pretrial Services Report shows that Gibbs was not on probation, parole, or other pretrial release when arrested for the current charges. (D.I. 134 at 47-51). The traits listed in the first sub-factor – particularly "criminal history" and "past conduct" – still counsel against release. Gibbs has a lengthy criminal history that includes convictions for assault, sexual assault, and conspiracy to distribute cocaine. (D.I. 134 at 49-50). At the detention hearing, Judge Hall stated that she was "concerned . . . about the safety of other persons in the community" before discussing this criminal history in connection with the third § 3142(g) factor. (D.I. 129 at 24:7-25:15). This Court agrees that even though many of Gibbs' convictions are several years old (D.I. 134 at 49-50), they still raise doubts that any release conditions can ensure community safety.

Gibbs' more recent conduct raises further doubts that pretrial release conditions could protect the community. Gibbs writes that he "is willing to accept any conditions" of release this Court may impose (D.I. 123 at 3-4) but he has not always complied with previous directives from this Court. The current protective order, for instance, states that "alleged victims or witnesses will not be identified in public pleadings." (D.I. 111 at 5). Yet as the government pointed out at the

9

May 6 hearing, Gibbs has identified alleged victims by name in filings. (D.I. 142 at 4:4-4:5) (*see also* D.I. 118 at 1 (redacted version of a letter Gibbs filed after the current protective order in which he identified a potential witness by name)). The current protective order also prohibits Gibbs from contacting potential witnesses and alleged victims, either directly or indirectly. (D.I. 111 at 2-3). The government informed the Court at the May 6 hearing that Gibbs has repeatedly tried to contact others and has had restrictions imposed on his phone and email use, as recently as the day of the hearing. (D.I. 142 at 3:25-4:21).

Gibbs claims to conduct legitimate business (D.I. 123 at 14-15, 21), support non-profit activities (D.I. 123 at 16-17), have strong family and community ties (D.I. 123 at 17, 22) and suffer from physical ailments (D.I. 123 at 4-5, 14-15). Whatever a defendant's attributes or disabilities, however, this Court must focus on the question of whether pretrial release conditions can ensure community safety. *See, e.g., Crosby-Avant,* 2023 WL 6647051 at *4 (denying pretrial release after finding that "the Defendant's strong community ties and employment history cannot overcome his other (negative) characteristics"). Gibbs' purported positive qualities have not deterred him from the behavior described above, or from – by his own admission – operating an escort service before his arrest. (D.I. 20 at 1).[9] The Court finds that the defendant's history and characteristics also favor detention.

---

[9]  Gibbs' criminal record and recent conduct also distinguish his case from two cases he cites in support of pretrial release. *See United States v. Eischeid*, 315 F. Supp. 2d 1033, 1036 (D. Ariz. 2003) (granting pretrial release "in light of the defense proffer that [Defendant] has lived a responsible and crime-free life," with "no evidence to suggest that the charge is typical of [Defendant's] past behavior") and D.I. 123 at 13-14 (citing this case in support of pretrial release). *See also U.S. v. Mancuso*, 726 F. Supp. 1210, 1214 (D. Nev. 1989) (finding no "threat to safety" in event of pretrial release) and D.I. 123 at 9-10 (citing this case in support of pretrial release).

### 4. Danger to the Community

The final factor, "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," 18 U.S.C. § 3142(g)(4), also favors detention. The evidence discussed above demonstrates that Gibbs could pose a significant danger to the community if released. Moreover, Gibbs proposes to reside at 32287 Jimtown Road in Lewes. (D.I. 142 at 26:15-27:7). Evidence proffered in the Detention Memorandum shows that Gibbs used this address to house some of the alleged victims and conduct other aspects of the alleged sex-trafficking scheme (D.I. 20 at 2, 7, 15, 18, 23) suggesting that Gibbs could find this location conducive to further criminal activity if released. Location monitoring could not fully mitigate this risk; the Detention Memorandum explains that Gibbs communicated with many of the alleged victims using Facebook. (D.I. 20 at 17-18). The Court also cannot accept any assurances to avoid the internet or comply with other conditions that Gibbs might offer. As discussed above, he has a history of violating Court directives, and he failed to propose a suitable custodian for pretrial release at the May 6 hearing. (D.I. 142 at 27:8-27:24). For these reasons, the Court finds clear and convincing evidence, under each of the § 3142(g) factors, that no pretrial release condition or combination of conditions can reasonably assure the safety of any person and the community.

**B.  The *Accetturo* Factors Do Not Indicate A Due-Process Violation, But Gibbs May Request An Earlier Trial Date**

"The due process analysis in this [pretrial detention] context should reflect the factors relevant in the initial detention decision as well as the following three *Accetturo* factors: (1) the length of the detention that has in fact occurred; (2) the complexity of the case; and (3) whether the strategy of one side or the other has added needlessly to that complexity." *United States v. Howard*, No. 4:17-CR-291-4, 2020 WL 1891880, at *3 (M.D. Pa. Apr. 16, 2020) (citing *Accetturo*,

783 F.2d at 388). These three factors, examined together with the § 3142(g) factors described above, do not show that Gibbs' pretrial detention violates due process.

### 1. Length of detention

Gibbs was ordered detained on May 11, 2023. (D.I. 129). Based on discussions with Gibbs' then counsel, now standby counsel, this Court set trial for May of 2024. (D.I. 76). At Gibbs' request, the Court then moved back his trial from May 2024 to May 2025, (D.I. 144 at 24:23-27:3),[10] making for two years in pretrial detention. Another Third Circuit district court upheld five years of pretrial detention after finding that "the mere length of pretrial detention is not dispositive to the inquiry into whether pretrial detention offends due process." *United States v. Akinola*, No. CR 11-310, 2016 WL 3566958, at *2 (D. N.J. June 28, 2016) (citing *Accetturo*, 783 F.2d at 388). The Court must therefore examine the case's other two *Accetturo* factors.

### 2. Complexity of the Case

This case is complex. At the April 24 status conference, the government told the Court that "at least a couple hundred thousand" pages' worth of electronic and paper discovery had been provided to Gibbs. (D.I. 144 at 20:8-20:17). Some district courts in the Third Circuit have treated complexity as a factor supporting pretrial detention, while others have treated it as a factor supporting release. *Compare United States v. Gatto*, 727 F. Supp. 903, 916 (D. N.J. 1989) (finding that "the length of detention and [high] complexity do not outweigh the danger to the community if this defendant were released") *with United States v. Hodge*, Criminal Action No. 2016-0009, 2018 WL 1123866 at *8-*9 (D. V.I. Feb. 23, 2018) (finding that case's high complexity "weighs against a due process violation") *and United States v. Harris*, No. 4:19-CR-00207-03, 2023 WL 2290269, at *4 (M.D. Pa. Feb. 28, 2023) ("because more complex cases necessarily require more

---

[10] The government sought a trial date earlier than May of 2025, but the Court acceded to Gibbs' request for more time. (D.I. 144 at 25:8-27:2).

12

extensive trial preparation, the more complex the case the less likely a prolonged period of pretrial detention is to offend due process"). In *United States v. Xu*, the court focused less on the case's complexity itself and more on whether either side had "added needlessly" to that complexity. *See Xu*, 2018 WL 2435192 at *3 ("Critically, Xu is responsible for nearly all of the delay that has occurred to this point"). This Court will do the same here.

### 3.     Whether Either Side Has "Added Needlessly" to the Complexity

The government has not "added needlessly" to this case's complexity. *See Accetturo*, 783 F.2d at 388 (explaining that this action could violate a detained defendant's due process rights). At a February 23, 2024, hearing, the government acknowledged that the Federal Bureau of Prisons had improperly restricted Gibbs' access to discovery at times. (D.I. 108 at 44:20-45:12). Gibbs cites one case, *United States v. Vastola*, in which the District of New Jersey granted pretrial release in part because it found "some governmental responsibility for the delay in reaching trial." (D.I. 123 at 9 (quoting *United States v. Vastola*, 652 F. Supp. 1446, 1448 (D. N.J. 1987)). Unlike that case's defendants, however, it is Gibbs who has delayed trial in this matter by choosing to proceed *pro se* and requesting discovery in particular formats. *See Vastola*, 652 F. Supp. at 1447 (naming *Vastola* defendants' attorneys) and D.I. 103 at 55:15-56:4 (Gibbs choosing to proceed *pro se*). This Court warned Gibbs that if he made this choice, his access to discovery could be limited and the proceedings delayed. (D.I. 103 at 35:21-36:21, 41:16-41:20). Courts have previously found that when a defendant chooses to proceed *pro se*, any resulting discovery challenges do not needlessly complicate a case. *Xu*, 2018 WL 2435192 at *3. This Court applies that finding today.

Gibbs has also filed several *pro se* motions for dismissal and other relief. (D.I. 80, 83, 91, 112, 117, 118, 122, 123, 136). To the extent the time needed to fully brief and decide on these motions has pushed back Gibbs' trial preparation, any resulting delay has not violated due process. The Court agrees with the Middle District of Pennsylvania that although defendants "can and

should mount a vigorous defense . . . they cannot now cry foul for the delay caused by their pretrial litigation tactics. The delay is by no means needless. It is also by no means attributable to the Government." *Harris*, 2023 WL 2290269 at *5. *See also United States v. Telfair*, Criminal Action No. 08-CR-0757 (DMC), 2008 WL 5188846 at *4 (D. N.J. Dec. 10, 2008) (denying pretrial release following 22-month detention after noting that "most of the delays in this case are due to the inherent complexities accompanying the significant number of motions and changes of counsel that have been made by Defendant"). Here, too, the Court cannot find that any government actions have "added needlessly" to the case's complexity – or, by extension, violated due process.

The Court set Gibbs' trial for May 2025 at his request. (D.I. 144 at 24:23-27:3). Even now, however, he remains free to request an earlier trial date should he wish. Given that neither the *Accetturo* factors nor the § 3142(g) factors show that pretrial release is warranted, however, this Court will not release Gibbs before trial.

## IV. CONCLUSION

For the reasons stated above, Gibbs' request for bail (D.I. 123; 142) is DENIED. An appropriate order will issue.

14