IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,    )
    )
v.    )
    )   Criminal Action No. 23-35-MN-1
CLIFTON GIBBS,    )
    )
Defendant.    )

### MEMORANDUM OPINION

Kristen Clarke, Briana Knox, Shannon T. Hanson, Julie Pfluger, Rebekah Bailey, Caylee Campbell, U.S. DEPARTMENT OF JUSTICE, Wilmington, DE, Madison, WI, and Washington, DC– Attorneys for Plaintiff

Gina A. Amoriello, LAW OFFICES OF GINA A. AMORIELLO; 1515 Market Street; Suite 1200; Philadelphia, PA – Attorney for Defendant Clifton Gibbs

March 13, 2025
Wilmington, Delaware



**NOREIKA, U.S. DISTRICT JUDGE**

Presently before the Court are Defendant's four motions to dismiss the Government's indictment against him ("the Indictment").[1]  (D.I. 117, 122, 138, 152).  For the reasons discussed below, the Court DENIES the motions.

## I.    BACKGROUND

On April 13, 2023, the grand jury returned an Indictment against Clifton Gibbs ("Defendant") and Brooke Waters (together, "Defendants") for allegedly trafficking thirteen individuals between April 2014 and December 2020.  (D.I. 3).  The Indictment alleges 17 total counts against Defendants: nine counts of sex trafficking against both Defendants in violation of 18 U.S.C. §§ 1591(a)(1), (b)(1), 1594(a), & 2; six counts of forced labor against both Defendants under 18 U.S.C. §§ 1589, 1594(a), & 2; and one count each of interstate transportation for the purposes of prostitution, 18 U.S.C. § 2421(a).[2]  (D.I. 3).  On January 30, 2024, Ms. Waters entered a guilty plea.[3]  (D.I. 3-8 at 1).  Mr. Gibbs pleaded not guilty to all counts.  (*Id.*).

Defendant filed the instant motions to dismiss on March 13, March 18, April 26, and June 5, 2024, respectively.  (D.I. 117, 122, 138, 152).  The first motion ("the March 13 Motion") argues that the Indictment is deficient under Rules 7(c)(1) and 12(b) of the Federal Rules of Criminal Procedure.  (D.I. 117).  The second motion ("the March 18 Motion") seeks dismissal of the sex trafficking charges on the grounds that Defendant did not "coerce," "force," or otherwise

---

[1]    Originally filed *pro se*, these motions have since been adopted by Defendant's newly retained counsel.  (D.I. 177, 178).

[2]    The attempt charges pursuant to 18 U.S.C. § 1594(a) for Counts 1 through 8 have been dismissed.  (D.I. 108 at 3:8-4:4).

[3]    Ms. Waters pleaded guilty to Counts 5 (sex trafficking Victim 5), 13 (forced labor of Victim 12), and 16 (interstate transportation of Victims 5 and 6 for the purposes of prostitution).  (D.I. 3-8 at 1).

inflict "serious harm" on his victims. (D.I. 122). The third motion ("the April 26 Motion") claims that the Indictment fails to properly charge aiding and abetting under 18 U.S.C. § 2. (D.I. 138). The final motion ("the June 5 Motion") challenges the Court's jurisdiction, the legitimacy of the grand jury proceedings, and the sufficiency of the indictment, and additionally requests production of grand jury transcripts. (D.I. 152).

All four motions have been fully briefed. (D.I. 117, 122, 131, 133, 138, 141, 149, 150, 152, 156, 170). The Court now addresses each in turn.

## II.    LEGAL STANDARDS

### A.    Rule 7 Sufficiency Of The Indictment

Rule 7(c)(1) of the Federal Rules of Criminal Procedure states that an "indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." *Id.* An indictment that fails to do so must be dismissed. Fed. R. Crim. P. 12(b)(3).

Courts have extrapolated that an indictment satisfies Rule 7(c)(1), as well as the Fifth and Sixth Amendments, if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Willis*, 844 F.3d 155, 161 (3d Cir. 2016) (quoting *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989)). "[D]etailed allegations . . . are not contemplated by Rule 7(c)(1)." *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007). "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense." *United States v.*

*Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011) (citation omitted).  Courts "should uphold the indictment 'unless it is so defective that it does not, by any reasonable construction, charge an offense.'" *Willis*, 844 F.3d at 162 (quoting *United States v. Vitillo*, 490 F.3d 314, 324 (3d Cir. 2007)).

### B.    Rule 12 Motion To Dismiss

Rule 12(b) provides the vehicle by which to challenge criminal charges.  A criminal complaint may be dismissed if there is "a defect in the indictment or information," including "lack of specificity" and "failure to state an offense."  Fed. R. Crim. P. 12(b)(3)(B).  An additional ground for dismissal is that "the specific facts alleged fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation."  *United States v. Stock*, 728 F.3d 287, 292 (3d Cir. 2013) (ellipses omitted) (quoting *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002)).

A "challenge to the sufficiency of the indictment should be decided based on the facts alleged within the four corners of the indictment, not the evidence outside of it."  *Vitillo*, 490 F.3d at 321.  The Court "must accept as true the factual allegations set forth in the indictment."  *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012); *United States v. Vepuri*, 74 F.4th 141, 143 n.1 (3d Cir. 2023).

## III.    DISCUSSION

### A.    The March 13 Motion

Defendant makes two initial arguments for dismissal.  He asserts that the Indictment (1) lacks sufficient factual detail to satisfy the charging requirements of Rule 7(c)(1), and (2) charges conduct that is impermissibly vague under the statutes at issue.  (D.I. 117, 141).  The Court disagrees on both points.

#### 1.    Sufficiency of the Indictment

First, each of the Indictment's sex trafficking counts recites "all the essential elements of the offense charged in the statutory language" of § 1591(a).  *Rankin*, 870 F.2d at 114.  The

Government specifically alleges that Defendants, "in and affecting interstate and foreign commerce . . . knowingly recruited, enticed, harbored, transported, provided, obtained, and maintained [each] Victim, . . . knowing and in reckless disregard of the fact that means of force, threats of force, fraud, [and] coercion, . . . would be used to cause [that] Victim [] to engage in a commercial sex act." (D.I. 3 at 1-6). Each count also details that the charged conduct occurred during a definite period "in the District of Delaware and elsewhere." (*Id.*). That comports with the sufficiency standard. *See Stock*, 728 F.3d at 292; *Rankin*, 870 F.2d at 112.

The Indictment's forced labor counts also allege every element of a violation under that statute. *See* 18 U.S.C. § 1589(a). They assert that, Defendants "knowingly provide[d] and obtain[ed] the labor and services of [each] Victim . . . by (a) threats of serious harm to [each] Victim []; and (b) means of a scheme, plan, and pattern intended to cause [each] Victim [] to believe that, if [they] did not perform such labor or services, that Victim . . . would suffer serious harm." (D.I. 3 at 6-9). Similarly, each count identifies a timeframe and place of commission of the act: between July 2016 and December 2020 "in the District of Delaware and elsewhere." (*Id.*). This too meets the pleading standard.

The final charge against Defendant, Count 17 for interstate transport for the purposes of prostitution, also closely tracks the relevant statutory language. *See* 18 U.S.C. § 2421(a). It alleges that, "[o]n or about January 11, 2016, in the District of Delaware and elsewhere," Defendant "knowingly transport[ed] an individual in interstate commerce . . . from Delaware to Maryland, with the intent that such individual engage in prostitution." (D.I. 3 at 10).

Each count thus contains, as required, "the elements of the offense[s] intended to be charged." *United States v. Stevenson*, 832 F.3d 412, 423 (3d Cir. 2016) (citation omitted). By also providing the month and year that each alleged violation began and ended, the Indictment

meets the Third Circuit's temporal sufficiency standard. *Id.*; *United States v. Gillette*, 738 F.3d 63, 74 (3d Cir. 2013). Contrary to Defendant's argument that the Indictment must pinpoint the specific time and place of each alleged offense, (D.I. 117 at 18-19), the Third Circuit has held that it is enough to identify a general "time period during which the alleged violations occurred." *Gillette*, 738 F.3d at 74; *Stevenson*, 832 F.3d at 424.

Finally, the Indictment alleges that Defendants committed each offense with the requisite state of mind – "knowingly" or "in reckless disregard" – set forth by the relevant statutory provisions. (D.I. 3 at 1-10). It therefore survives Mr. Gibbs' arguments that the necessary mens rea was not alleged. (D.I. 141 at 37-41).

The cases Defendant cites in which courts found indictments insufficient are distinguishable and do not change the analysis. (*See* D.I. 117, 141). The defective indictments in those cases lacked information that is already included in (or extraneous to) the Indictment here,[4] or otherwise were brought under different statutes or in other circuits with different sufficiency standards.[5]

---

[4]     *See, e.g.*, *United States v. Hess*, 124 U.S. 483, 488-89 (1888) (indictment failed to allege "essential requirements" of the statute); *United States v. Carll*, 105 U.S. 611, 613 (1881) (failed to allege mens rea); *United States v. Simmons*, 96 U.S. 360, 362-63 (1877) (failed to identify a necessary accomplice or state accomplice's identity was unknown); *United States v. Spinner*, 180 F.3d 514, 515-17 (3d Cir. 1999) (indictment "failed to allege the interstate commerce element of the crime"); *United States v. Wander*, 601 F.2d 1251, 1258-60 (3d Cir. 1979) (indictment "fail[ed] to charge an essential element of the crime"); *Hale v. United States*, 89 F.2d 578, 579 (4th Cir. 1937) (same); *United States v. Schmitz*, 634 F.3d 1247, 1261-62 (11th Cir. 2021) (fraud charges "insufficient because they provide absolutely no factual detail").

[5]     *See, e.g.*, *Russell v. United States*, 369 U.S. 749, 771 (indictment for failure to answer congressional subcommittee questions under 2 U.S.C. § 192); *Government of Virgin Islands v. Greenidge*, 600 F.2d 437 (3d Cir. 1979) (violation of Virgin Islands rape statute); *United States v. Williamson*, 903 F.3d 124, 130-31 (D.C. Cir. 2018) (indictment sufficient that "parrot[ed] the statutory language and specif[ied] the time and place of the offense"); *United States v. Conlon*, 628 F.2d 150, 156 (D.C. Cir. 1980) (charge that largely tracked

Given that the Indictment lists each required element of each count charged, along with a general timeframe or specific date, general location, and unique anonymized identifier for each alleged victim, the Court finds that the Indictment is valid under Rule 7(c)(1).

### 2.    The Statutory Term 'Commercial Sex Act'

Defendant also takes issue with the statutory definition of the term "commercial sex act," which is "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). Defendant contrasts this phrasing with the more specific definition of "sexual act" in a statute not implicated here – the "Sexual Abuse" statute, 18 U.S.C. § 2246(2). (D.I. 117 at 8-13). Defendant points out that, whereas § 1591(e) includes "*any*" sex act (emphasis added), § 2246(2) is confined to acts such as physical "contact," "penetration," or "intentional touching." § 2246(2)(A)-(D). He argues that, as compared to § 2246(2), the § 1591(e) definition "leav[es] it up to judges and prosecutors to arbitrarily make this determination based on an ambiguous term such as 'any.'" (D.I. 117 at 9). As a result, Defendant says, "there is no way this Court or this Defendant could possibly know or guess at the reason or conduct the grand jury considered in the issuance of this indictment." (*Id.* at 11). In other words, Defendant maintains that the ambiguity of the statute leaves him without reasonable notice as to what commercial sexual conduct the Act proscribes. If correct, that would make the statute void for vagueness.[6]

---

the statutory language was sufficient); *United States v. Miller*, 605 F. Supp. 3d 63, 71 (D.D.C. 2022) (failed to allege "an essential element of the crime" under "a statute [that] is so broad and general that its terms, without more, fail to inform a reasonable person of the essential conduct at issue"); *United States v. Hillie*, 227 F. Supp. 3d 57, 73-76 (D.D.C. 2017) (evaluating indictment under D.C. Circuit sufficiency standards that require greater specificity than the Third Circuit).

[6]    To the extent Defendant means that the Indictment lacks sufficient factual detail of this case's alleged "sex acts," the Court refers to the preceding section and the proposition that an indictment need only recite the elements of a crime and a general time when it occurred. *See Rankin*, 870 F.2d at 112; *Willis*, 844 F.3d at 161-62; *Gillette*, 738 F.3d at 74.

"[A] criminal law [is] vague [if] it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *United States v. Williams*, 553 U.S. 285, 304 (2008).  "A statute can be void for vagueness not only on its face, but as applied." *United States v. John-Baptiste*, 747 F.3d 186, 200 (3d Cir. 2014) (citations omitted).  In cases such as this, "vagueness challenges are evaluated on a case by case basis." *Moreno v. Att'y Gen. of United States*, 887 F.3d 160, 165 (3d Cir. 2018) (internal quotation marks omitted).

Neither the Third Circuit nor any constituent district court appears to have addressed whether the term "commercial sex act" is void for vagueness as it is used in § 1591.  District courts in other Circuits have considered the issue, however, and determined that it is not.  *See, e.g.*, *United States v. Sebastian*, No. 20-10170 (DJC), 2023 WL 2187895, at *15 (D. Mass. Feb. 23, 2023); *United States v. Rosenow*, No. 17-3430 (WQH), 2018 WL 6064949, at *14 (S.D. Cal. Nov. 20, 2018) ("The term 'commercial sex act' . . . is not unconstitutionally vague."); *United States v. Wilson*, No. 10-60102 (CR), 2010 WL 2991561, at *8-9 (S.D. Fla. July 27, 2010).  Those cases reasoned that "'Sex act' uses words of ordinary understanding," such that the term "encompasses not just sexual intercourse, but also actions taken for sexual gratification." *Sebastian*, 2023 WL 2187895, at *15.  Therefore, "[n]othing about what this statute proscribes is left to the imagination." *Wilson*, 2010 WL 2991561, at *9; *Madkins v. United States*, No. 08-343 (MMH), 2014 WL 4417849, at *21 (M.D. Fla. Sept. 8, 2014).

Indeed, Defendant does not seriously contend that the acts in which his alleged victims engaged were not "sex acts."  Thus, "the conduct at issue in this case is within the heartland of the term 'sex act' and Section 1591 provided fair warning that it applied to such conduct." *United States v. Paris*, No. 06-64 (CFD), 2007 WL 3124724, at *13 (D. Conn. Oct. 24, 2007); *Madkins*,

2014 WL 4417849, at *21 ("No reasonable person, at least under the facts of this case, would have difficulty understanding that § 1591 applies where, as here, one sells the bodies of [women or] girls in exchange for money.").

In any event, as the Supreme Court has said, a term or statute is not vague where it "requires a person to conform his conduct to an imprecise but comprehensible normative standard." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). Rather, it is vague where "no standard of conduct is specified at all." *Id.*; *Kolender v. Lawson*, 461 U.S. 352, 358 (1983). That is, just because "the provision is broad enough to permit more than one [possible] interpretation, that does not mean it is unconstitutionally vague." *Adams Outdoor Advert. Ltd. P'ship v. Pennsylvania Dep't of Trans.*, 930 F.3d 199, 205 (3d Cir. 2019); *Hill v. Colorado*, 530 U.S. 703, 733 (2000). Thus, the Court agrees that "the statute clearly articulates precisely what it prohibits," and declines to find Section 1591 void for vagueness. *Wilson*, 2010 WL 2991561, at *9; *Madkins*, 2014 WL 4417849, at *21.

## B.     The March 18 Motion

Next, Defendant asserts that his conduct does not constitute "coercion" or "force" as charged in the Indictment. (D.I. 122). Both the sex trafficking and forced labor charges encompass the coercion of victims to engage in paid sex by threatening or inflicting "serious harm." 18 U.S.C. §§ 1589(a), 1591(e)(2). "Serious harm" is defined in both statutes as "physical or nonphysical" harm that "compel[s] a *reasonable person* of the same background and in the same circumstances to perform or to continue performing labor or [commercial sex] services in order to avoid incurring that harm." *Id.* §§ 1589(c)(2), 1591(e)(5) (emphasis added).

One of the Government's theories of liability is that Defendant perpetrated a straightforward campaign of physical abuse against his victims. As the Magistrate Judge found at Defendant's detention hearing, "[t]he charges involve the use of violence and coercion. There are proffered allegations of rape by multiple victims. There are allegations of physical violence,

8

including punching and choking of victims.  There are allegations of threats.  There are allegations of brandishing firearms."  (D.I. 129 at 22:17-21).  Those allegations fall squarely within the statutes' definitions of "serious harm" and "coercion."  *See, e.g.*, *United States v. Williams*, 666 F. App'x 186, 199 (3d Cir. 2016) ("[W]e hold that beyond any question the evidence [of physical abuse] was sufficient to support the jury verdict convicting [defendant] on the two sex trafficking offenses."); *United States v. McIntyre*, 612 F. App'x. 77, 79-80 (3d Cir. 2015).

But a second hypothesis is that Defendants controlled their victims by giving them, getting them addicted to, and later withholding drugs, thereby making them sick.[7]  Defendant contends that the Government cannot indict him on that basis for three reasons:  (i) a drug addict is not a "reasonable person" subject to coercion under the statutes at issue; (ii) applying this standard to drug addicts would be "vague and ambiguous"; and (iii) "withholding drugs is not a crime."[8] (D.I. 122 at 1-2).  None of these arguments warrants dismissal.

---

[7]     For example, at Defendant's detention hearing, the Government presented evidence that "Defendants would give many of the Victims heroin (known to be a 'downer' drug) at night before going to sleep, and cocaine, crack, or crystal meth (known to be 'upper' drugs) before working.  GIBBS would often withhold drugs until the work was complete.  If the work was not done to his satisfaction . . . he would withhold drugs, which would induce withdrawal sickness, also known as 'dope sickness.'  Many Victims said that while GIBBS would ask them how much drugs they needed to avoid getting dope sick, he would rarely give them that amount so that they were consistently just barely recovering from dope sickness, and hovering just above the line of being dope sick again.  All of the Victims feared opiate withdrawal, and explained the symptoms as severe flu-like symptoms, gastrointestinal issues, and neurological symptoms that felt like 'creepy crawlers' under the skin.  The sickness was severe enough to make at least one of the Victims want to scratch her skin off."  (D.I. 20 at 8-9).  The Court provides this quotation only as context for Defendant's arguments – not as a substantive part of its reasoning.  *See Vitillo*, 490 F.3d at 321 ("[A] challenge to the sufficiency of the indictment should be decided based on the facts alleged within the four corners of the indictment, not the evidence outside of it.").

[8]     Defendant also argues that "[Federal] Rule [of Evidence] 412 does not preclude the Defendant from presenting evidence of the alleged victims' background where Congress made background an element of the crime."  (D.I. 122 at 17).  It is premature for the Court

First, Defendant asserts that he did not "coerce" his victims to continue performing acts of prostitution, because, as drug addicts, they could not sensibly fear "serious harm" from Defendant under the statutes' "reasonable person" standard.  (D.I. 122 at 1-3, 6-9).  Put bluntly, he says that "[a] reasonable person is at all times a sober person."  (D.I. 150 at 1).  The Court cannot accept this proffered reading.  First, Defendant cites no law in support of his theory.  Moreover, the suggestion that a drug addict cannot be susceptible to "serious harm" or "coercion" is not only illogical – some addicts, arguably, may be at-risk individuals especially vulnerable to malevolent influences – it is particularly unavailing here, where the victims identified in the Indictment are alleged to have been lured into substance abuse at Defendants' very hands.  (*See* D.I. 129 at 25:24-26:3 ("There is evidence that [Defendant] was . . . luring women with vulnerabilities into his alleged scheme.")).

And far from "vague and ambiguous," as Defendant claims, at least one other court in this Circuit has expressly found that "exploiting the drug addictions of victims to compel them to engage in commercial sex acts in order [to] avoid serious psychological and physical harm" is "sufficient to meet the definition of coercion under the [sex trafficking] statute."  *United States v. Arnold*, No. 17-02 (SHR), 2020 WL 618632, at *8 (M.D. Pa. Feb. 10, 2020) ("[T]he evidence also showed that [defendant] directly and intentionally exploited the heroin addictions and withdrawal symptoms of some of his victims by withholding heroin from them until they went on dates.").  The Third Circuit, for its part, recently upheld an "extraordinarily reprehensible" conviction for "sex-trafficking by force, fraud, and coercion" where the defendant "preyed on drug addicts; turned them into [prostitution] business assets for his own profit; ensured that he was their only

---

to decide issues of admissibility, however, and the Court declines to do so on the instant motions.  *See Bergrin*, 650 F.3d at 265; *Huet*, 665 F.3d at 595.

lifeline; and committed physically violent acts against them." *United States v. Johnson*, No. 21-1798, 2022 WL 3136482, at *2-3 (3d Cir. Aug. 5, 2022) (cleaned up); *see also McIntyre*, 612 F. App'x. at 79 & n.3.  And there is precedent from other circuit courts to the same effect.[9]  By contrast, Defendant offers no legal authority to support his position.  (*Cf.* D.I. 122, 150).

The definition of "serious harm" in the forced labor statute also "clearly encompasses a broad range of conduct," such that the control-by-drugs scheme alleged here qualifies.  *Burrell v. Staff*, 60 F.4th 25, 37 (3d Cir. 2023) ("The TVPA's more-expansive definitions of coercion reflect the 'increasingly subtle' ways by which labor may be forced, including both physical and 'nonphysical forms of coercion.'") (citations omitted).  There, "serious harm" is "intended to be construed with respect to the individual circumstances of victims that are relevant in determining whether a particular type or certain degree of harm or coercion is sufficient to maintain or obtain a victim's labor or services."  *United States v. Afolabi*, 508 F. App'x. 111, 117 (3d Cir. 2013) ("[S]erious harm . . . refers to a broad array of harms, including both physical and nonphysical.") (citations omitted).  The Supreme Court has explained that "the vulnerabilities of the victim are

---

[9]    *See, e.g.*, *United States v. Abraham*, 63 F.4th 102, 110 (1st Cir. 2023) (upholding sex trafficking convictions where coercion involved defendant "causing [victims'] drug addiction [and] withholding drugs"); *United States v. Shine*, No. 20-314, 2022 WL 761520, at *2 (2d Cir. Mar. 14, 2022) ("[Defendant] exploited victims' fear of homelessness, [drug] withdrawal, and violence to compel them to engage in commercial sex acts . . . [One victim] was denied drugs and got 'dope sick.'"); *United States v. Rhymes*, 827 F. App'x 266, 269 (4th Cir. 2020) (upholding sex trafficking conviction where defendant "provided [his victim] with cocaine, knowing [she] had an addiction"); *United States v. Mack*, 808 F.3d 1074, 1082 (6th Cir. 2015) ("[D]efendant carefully controlled [his victims'] access to drugs to cause them to engage in acts of prostitution, which they did to avoid the painful withdrawal symptoms induced by defendant's intermittent and unpredictable supply of free drugs. . . . [D]efendant's supplying and withholding of drugs . . . would result in serious harm."); *United States v. Groce*, 891 F.3d 260, 267 n.3 (7th Cir. 2018) ("The [sex-trafficking] evidence showed a pattern of physical abuse, threats, and coercion including controlling heroin access and manufacturing debt."); *United States v. Parks*, 902 F.3d 805, 814 (8th Cir. 2018) ("[T]he pimp may attempt to get [a victim] addicted to drugs, and then threaten to withhold the drugs if the victim does not agree to do what the pimp demands.").

relevant in determining whether the physical or legal coercion or threats thereof could plausibly have compelled the victim to serve." *United States v. Kozminski*, 487 U.S. 931, 952 (1988); *see also United States v. Bell*, 761 F.3d 900, 913 (8th Cir. 2014) ("Victim vulnerability is relevant to whether a victim was coerced."). Again, Defendant does not provide any authority to the contrary. (*Cf.* D.I. 122, 150).

Accordingly, the Court finds that the allegations here – control by drugs and threats of induced sickness from withdrawal – constitute "serious harm" with which a "reasonable person," including drug addicts, could be "coerced" or "forced" under the sex trafficking and forced labor statutes. 18 U.S.C. §§ 1589, 1591. For the same reasons, the Court rejects Defendant's contention that withholding drugs cannot constitute a crime. The Court therefore declines to dismiss the Indictment on those grounds.

### C.    The April 26 Motion

The Indictment alleges that Defendants assisted each other in sex trafficking and forced labor, in violation of the federal aiding and abetting statute, 18 U.S.C. § 2 ("Section 2"). (D.I. 3 at 1-9). Section 2 provides that whoever "aids, abets, counsels, commands, induces or procures [the] commission [of a crime], is punishable as a principal." The April 26 Motion seeks dismissal of these charges on the basis that (1) Counts 1 through 15 insufficiently charge aiding and abetting, and (2) the Government lacks constitutional authority and standing to prosecute those offenses. (D.I. 138 at 1-12).

### 1.    Aiding and Abetting: Principal v. Accomplice Liability

Defendant contends that he cannot be found guilty of aiding and abetting, because "there must be a guilty principal," and here, "[t]here is no principal, as neither [Mr. Gibbs or Ms. Waters] is alleged to have completed the substantive act." (D.I. 138 at 6). In other words, he says the

Indictment does not properly distinguish between which of Mr. Gibbs and Ms. Waters served as the principal, and which served as the accomplice in the charged conduct.  (*Id.*).

The Government responds that the Indictment does allege that Defendant completed the substantive criminal offense, because "[b]oth Defendants are charged in Counts 1 through 9 with both substantive sex trafficking and aiding and abetting," and, thus, "both Defendants are expressly named as both a principal and an accomplice."  (D.I. 149 at 2).  The Government also contends that it need not explicitly distinguish amongst Defendants as to which was the principal and which the accomplice, because Section 2 holds the two categories of actors equally liable.  (*Id.* at 1 n.2).

The Court agrees with the Government.  As a matter of course, the Indictment charges three alternative theories under Section 2:  (1) that Mr. Gibbs aided and abetted Ms. Waters, making Ms. Waters the principal; (2) that Ms. Waters aided and abetted Mr. Gibbs, making Mr. Gibbs the principal; and (3) that Mr. Gibbs and Ms. Waters were each a principal in their own right and an accomplice to the other.  (D.I. 3).  No matter how dissected, each count charges both Defendants as a principal and an accomplice.  (*Id.*).

Moreover, aiding and abetting is not a crime with independent elements under Section 2. *See United States v. Petersen*, 622 F.3d 196, 208 (3d Cir. 2010).  The statute provides no penalty; it merely explains that "[o]ne who aids and abets another is as guilty of the underlying offense as the principal."  *United States v. Ozcelik*, 527 F.3d 88, 94 (3d Cir. 2008); 18 U.S.C. § 2 ("[An accomplice] is punishable as a principal.").  The purpose of the statute was to "abolish the distinction between principals and accessories" under the common law.  *Standefer v. United States*, 447 U.S. 10, 19 (1980) (cleaned up); *Rosemond v. United States*, 572 U.S. 65, 70 (2014).

Accordingly, "aiding and abetting a crime has the exact same elements as the principal offense," and only "requires proof that at least one conspirator committed each of the elements of

the underlying substantive offense." *United States v. Stevens*, 70 F.4th 653, 662 (3d Cir. 2023) (cleaned up, citation omitted). A defendant, therefore, "may be responsible for a crime he has not personally carried out if he helps another to complete its commission." *Rosemond*, 572 U.S. at 70; *United States v. Donahue*, 885 F.2d 45, 48 (3d Cir. 1989). As a result, "aiding and abetting is implied in every federal indictment for a substantive offense." *United States v. Frorup*, 963 F.2d 41, 42 n.1 (3d Cir. 1992). In sum, then, when an indictment asserts Section 2 liability against multiple actors, the Government is not required to assign the roles of "principal" and "aider and abettor" to any of them. *See Standefer*, 447 U.S. at 20 ("[A]ll participants in conduct violating a federal criminal statute are 'principals.'"); *Stevens*, 70 F.4th at 662.

Defendant is correct that, *at trial*, the Government must *prove* that all the essential elements of the underlying crime were committed by at least one person. *See Ozcelik*, 527 F.3d at 95. On the present motion, however, the Court evaluates the sufficiency of the Indictment and not the Government's burden of proof at trial. Consequently, the Court denies Defendant's motion to dismiss the aiding and abetting charges under 18 U.S.C. § 2.[10]

## 2.    The Government's Authority to Indict

The April 26 Motion additionally challenges the Government's ability to indict Mr. Gibbs on two separate grounds: (1) that it lacks constitutional authority to bring sex trafficking

---

[10]    In addition, Defendant argues that "[n]othing in the indictment presents a factual orientation of aiding and abetting nor the mens rea required to support [it]." (D.I. 138 at 1). But, as already explained, for a proper indictment, "detailed allegations are unnecessary" and "a factual orientation that includes a specification of the time period of the alleged offense is sufficient." *Stock*, 728 F.3d at 292 (internal quotation marks and citation omitted); *Willis*, 844 F.3d at 161-62. Here, as discussed above, the Indictment is sufficient because it charges the mens rea of "knowing and in reckless disregard," (D.I. 3), and "contains the elements of the offense charged and fairly informs [the] defendant of the charges against which he must defend." *Hamling v. United States*, 418 U.S. 87, 117 (1974).

indictments under the Commerce Clause; and (2) that it does not have standing to indict or prosecute federal crimes committed against non-government victims.  (D.I. 138 at 6-9).

As to the first argument, Defendant challenges the constitutionality of Counts 1 through 9. He argues that the federal sex trafficking statue is unconstitutional because in *United States v. Morrison*, 529 U.S. 598 (2000), "the [Supreme] Court held Congress has no authority to legislate violence against women."  (D.I. 138 at 7).   In *Morrison*, the Court found that Congress unconstitutionally exceeded its legislative power under the Commerce Clause and Fourteenth Amendment when it enacted the Violence Against Women Act of 1994 ("VAWA").  *Morrison*, 529 U.S. at 627.  But VAWA is not the statute under which Mr. Gibbs is indicted here.  That is the "Trafficking Victims Protection Act of 2000" ("TVPA").  Pub. L. No. 106-386, 114 Stat. 1464; *United States v. Marcus*, 560 U.S. 258, 260 (2010).  As the Ninth Circuit has observed, "[t]he TVPA is unlike the Violence Against Women Act of 1994, which sought to protect women by making gender-motivated crimes of violence actionable and was found to be beyond the power of Congress because its subject matter was not commerce."  *United States v. Todd*, 627 F.3d 329, 333 (9th Cir. 2010) (citations omitted).  The TVPA concerns "the traffic in the sexual services of women" as well as the "advertising across state lines" of those services, and thus "deals with commerce."  *Id.*  It was, therefore, lawfully enacted pursuant to the Commerce Clause.  *See Paris*, 2007 WL 3124724, at *8 ("[T]here is a clear nexus between [the defendant's] intrastate recruiting and obtaining of women to commit commercial sex acts, the interstate aspects of [the defendant's] business, and the interstate market for commercial sex.").

Second, Defendant challenges the Government's standing to indict him.  He argues "[i]n order for one person to be held criminally responsible as an aider and abettor in the commission of an act by another, the act committed by this other person must constitute a crime against the

government which prosecutes the charge." (D.I. 138 at 9). The Court interprets Defendant's argument to assert that "a crime against the government" is only one where the Government is the victim, and not, as here, where third-party individuals have been harmed. (*Id.*). To the extent that is his argument, it has long been the case that "an injury to the United States . . . suffices to support a criminal lawsuit by the Government." *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000). The Government may prosecute federal crimes because "[t]he Government doubtlessly suffers an 'injury in fact' when a defendant violates its criminal laws." *United States v. Yarbrough*, 452 Fed. App'x. 186, 189 (3d Cir. 2011). Therefore, "the United States may bring suit to protect its sovereign interests notwithstanding the lack of any immediate pecuniary interest." *United States v. City of Pittsburgh*, 757 F.2d 43, 45 (3d Cir. 1985) (quoting *United States v. Lewisburg Area Sch. Dist.*, 539 F.2d 301, 305 (3d Cir. 1976)). To the extent Defendant's argument concerns this Court's jurisdiction to hear the case, rather than the Government's standing to bring it, federal district courts "have original jurisdiction . . . of all offenses against the laws of the United States." 18 U.S.C. § 3231.

In conclusion, neither argument provides the Court with a basis to conclude that the Indictment here runs afoul of the Constitution.

### D.    The June 5 Motion

Finally, the Court addresses the June 5 Motion. (D.I. 152 at 1). The Court understands the Motion to seek dismissal on the bases that: (1) Counts 1 through 8 improperly charge attempt; (2) the Court lacks jurisdiction; and (3) certain grand jury testimony was not credible, or, alternatively, was improperly influenced.[11] (*Id.*). The Motion additionally (4) requests transcripts of the grand jury proceedings that led to his indictment. (*Id.*). The Court addresses each below.

---

[11]    The Court understands these to be Defendant's contentions from the substance of the June 5 Motion, as opposed to its title or caption. *See Turner v. Evers*, 726 F.2d 112, 113

1.    **The Attempt Charges**

In addition to the substantive offenses, each of the Indictment's sex trafficking and forced labor counts charges attempt under 18 U.S.C. § 1594(a).  (D.I. 3 at 1-10 ("and attempted to do so")).  At the February 23, 2024 hearing, the Government made an oral motion to dismiss the attempt charges in Counts 1 to 8, which the Court granted.[12]  (D.I. 108 at 2:5-4:4).  Defendant now argues that should have resulted in the complete – rather than partial – dismissal of those counts, because the Indictment "failed grammatically to charge the substantive offense," and, therefore, only "allege[s] incomplete crimes."  (D.I. 152 at 2, 22, 37-38).  According to Defendant, "all the sex trafficking crimes in this Indictment only allege an attempt to violate the substantive offense, applying proper grammar," and, thus, "[t]he Court failed to dismiss the charges associated with [the attempt] counts in violation of due process."[13]  (*Id.* at 2, 37).

Each of the sex trafficking counts charges that Defendants "knowingly recruited, enticed, harbored, transported, provided, and maintained . . . [a] Victim . . . knowing and in reckless disregard of the fact that means of force, fraud, [and] coercion . . . ***would be used to cause*** [that] Victim [] to engage in a commercial sex act; and attempted to do so."  (D.I. 3 at 1-5 (emphasis added)).  The specific syntax Defendant takes issue with is the phrase "would be used to cause," which he says expresses only a "desire or aspiration" to commit a substantive offense and does not properly allege "an act performed."  (D.I. 152 at 37).

---

12    Counts 9 through 15 also charge attempt but were not dismissed.  (*See* D.I. 108 at 3:8-4:4).

13    The Court reads "all the sex trafficking crimes" to refer to Counts 1 through 9, which allege violations of 18 U.S.C. §§ 1591 (a)(1) and (b)(1).  Thus, the following analysis applies equally to Count 9, which shares the same language as Counts 1 through 8, notwithstanding that Count 9 was not subject to the same partial dismissal.  (*See* D.I. 108 at 3:8-4:4).

(3d Cir. 1984) (holding that the substance of a motion governs); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (stating the general rule that courts must liberally construe pro se litigants' pleadings).

The Court disagrees. The third clause of the charges alleges affirmative conduct: that Defendants "recruited, enticed, harbored, transported, provided, and maintained [a] Victim." (D.I. 3 at 1-5). Contrary to Defendant's suggestion, these "active verbs" directly "connote action" or "a series of acts." *United States v. Heinrich*, 57 F.4th 154, 165 (3d Cir. 2023). The "would be used to cause" clause, which comes later in the paragraph and with which Defendant takes issue, instead describes Defendants' mental state, or mens rea, of "knowing" or "in reckless disregard." 18 U.S.C. § 1591(a). Thus, properly read, the Indictment states that Defendants affirmatively committed their conduct "*knowing and in reckless disregard* of the fact that [such force] *would be used to cause* Victim[s] [] to engage in a commercial sex act." (D.I. 3) (emphasis added).

The difference between the statute's use of "will" and the Indictment's use of "would" is only one of proper grammar – the Indictment's description of past acts mandates "would," whereas the statute's forward-looking context requires "will." *See United States v. Juskowich*, No. 21-54 (CCW), 2021 WL 5166564, at *1, *4 (W.D. Pa. Nov. 5, 2021) (sex trafficking charges sufficient where indictment used "would" rather than "will"). This reading is further supported by the general rule that an indictment is valid where it tracks the language of the statute under which the criminal charges are brought. *See Stevenson*, 832 F.3d at 424; *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007). Accordingly, Counts 1 through 8 track the language of 18 U.S.C. § 1591(a), and the Court denies the motion to dismiss on "grammatical" grounds.

### 2.    The Court's Jurisdiction

Next, in passing, Defendant makes the argument that "[a]ny attempt crime charged against [him] where no interstate or foreign commerce was affected at best would be a state charge." (D.I. 152 at 7). Defendant explains that, in his view, "[t]he Court does not have the power to adjudicate purely intrastate crimes that do not substantially affect interstate commerce." (*Id.* at 33). The Court interprets Defendant to challenge its jurisdiction over the attempt charges in Counts

9 through 15 of the Indictment, as those charges have not been dismissed.  (*See* D.I. 108 at 3:8-4:4).

Once again, this Court has jurisdiction over every charge alleged in the Indictment pursuant to 18 U.S.C. § 3231, which provides that "the district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."  Here, the Indictment alleges that Mr. Gibbs has violated federal statutes that set forth specific offenses against the United States, including "in or affecting interstate commerce": 18 U.S.C. §§ 2, 1591(a)(1) & (b)(1), 1594(a), and 2421(a).  (D.I. 3).  And, as explained earlier, there is no constitutional infirmity with the TVPA.  *See Todd*, 627 F.3d at 333; *Marcus*, 560 U.S. at 260.  This case is squarely within the Court's jurisdiction.  *See Vermont Agency of Natural Res.*, 529 U.S. at 771.

### 3.    Grand Jury Witness Credibility

Defendant next asserts that dismissal of the Indictment is warranted because he suspects that several grand jury witnesses lied or were "provoked" by the Government to "fabricate" incriminating testimony.  (D.I. 152 at 6-12).  The Government responds that "[t]he credibility of witnesses is a determination to be made by the factfinder at trial" and is "irrelevant to a motion to dismiss."  (D.I. 170 at 2).  The Government is correct.

"Proceedings before a grand jury are generally accorded a strong presumption of regularity."  *United States v. Winchester*, 407 F. Supp. 261, 277 (D. Del. 1975).  "[M]ere suspicions of impropriety will not justify intrusion into the confidentiality of the proceedings."  *United States v. Boffa*, 513 F. Supp. 444, 496 (D. Del. 1980).  As a result, "a defendant seeking the production of grand jury records must do more than make general unsubstantiated or speculative allegations

of impropriety."[14] *United States v. Stafford*, No. 08-122 (GMS), 2009 WL 275470, at *3 (D. Del. Feb. 5, 2009).

Here, Defendant provides no support for his suggestions of impropriety.  His argument for disclosure is rooted in his suspicion that the grand jury was presented with false testimony. Although Defendant does not know what was said during these proceedings – or who testified – he asserts that several victims and presumptive witnesses are inherently untrustworthy people. (D.I. 152 at 4, 18).  Indeed, his brief is replete with *ad hominem* attacks and examples of purported witness contradictions.  (*Id.*).  The Court finds that such tactics are the type of "unsubstantiated or speculative allegations of impropriety" that courts have time and again found to be insufficient for the disclosure of grand jury materials.  *Stafford*, 2009 WL 275470, at *2; *Winchester*, 407 F. Supp. at 277; *Boffa*, 513 F. Supp. at 496.  If Defendant seeks to challenge the credibility of a witness, he may do so at trial.  *See Rehberg v. Paulk*, 566 U.S. 356, 373-74 (2012) ("[A] critical grand jury witness is likely to testify again at trial and may be cross-examined at that time.").

Thus, Defendant has failed to convince the Court that the suspected grand jury witnesses "substantially influenced the grand jury's decision to indict," or that "there is grave doubt that the decision to indict was free from substantial influence of alleged prosecutorial misconduct."

---

[14]    As the Supreme Court has explained, "[i]f indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury.  This is not required by the Fifth Amendment.  An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *Costello v. United States*, 350 U.S. 359, 363 (1956) (denying motion to dismiss the indictment where the evidence before the grand jury constituted hearsay).

*Stafford*, 2009 WL 275470, at *2 (internal quotation marks and citation omitted).  The Court denies Defendant's motion to dismiss the Indictment on this ground.

### 4.   Request for Grand Jury Transcripts

Finally, Defendant requests production of grand jury transcripts.  "As a matter of public policy, grand jury proceedings generally must remain secret except where there is a compelling necessity."  *United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1989).  The Court may order disclosure of grand jury materials where the defendant "shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Fed. R. Crim. P. 6(e)(3)(E)(ii).  Such a showing requires "a particularized need for that information which outweighs the public interest in secrecy."  *McDowell*, 888 F.2d at 289.

As an initial matter, the Government responds that "the grand jury transcripts constitute Jencks material and are not discoverable at this time."  (D.I. 170 at 1).  That is, as a matter of law, correct.  "[T]he Jencks Act [does] provide for the disclosure of grand jury testimony of a witness *after* he has testified" at trial.  *United States v. Budzanoski*, 462 F.2d 443, 454 (3d Cir. 1972) (emphasis added, citation omitted); Fed. R. Crim. P. 26.2.  In practice, however, "many federal prosecutors routinely turn over Jencks material a few days before the witness testifies."  *United States v. Maury*, 695 F.3d 227, 248 n.18 (3d Cir. 2012).  Such is the case here, where the Government has agreed to hand over appropriate grand jury transcripts "approximately 30 days before trial."  (D.I. 170 at 1, n.1).

To the extent Defendant's motion seeks the transcripts earlier, the Court will deny Defendant's motion.  As discussed in the preceding section, Defendant has failed to raise a non-speculative issue as to the fairness of the grand jury proceeding that returned the Indictment here. *See Budzanoski*, 462 F.2d at 454 ("[T]here may be pre-trial discovery of the testimony of a [grand jury] witness when it relates to the dismissal of the indictment, or upon a showing of substantial

likelihood of gross or prejudicial irregularities in the conduct of the grand jury.") (internal citations omitted).    As a result, he has failed to demonstrate a "particularized need" or "compelling necessity" for disclosure of the transcripts, let alone one that outweighs the overarching interest in secrecy of the process.    *McDowell*, 888 F.2d at 289.    Absent a compelling reason to order production of the grand jury transcripts now, the Court denies the motion.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motions to Dismiss the Indictment (D.I. 117, 122, 138, 152) are DENIED.    An appropriate order will issue.